## Sabatino License

*Rogers & O'Neill*, for appellant.

*Frank M. Perna*, for Secretary of Revenue.

GAWTHROP, P. J., April 2, 1963.—John J. Sabatino appealed from the order of the Secretary of Revenue suspending his operator's license for a period of three months, effective September 24, 1962, for violation of the provisions of section 1002(b)(6) of The Vehicle Code of April 29, 1959, P. L. 58, 75 PS §1002(b)(6), restricting the speed of vehicles to 50 miles per hour. A hearing de novo was held, as a result of which we make the following

### Findings of Fact

1. On January 3, 1962, about 12:30 p.m., appellant was apprehended while driving his Plymouth automobile at a speed of 60 miles per hour in a 50 miles per hour zone on the West Chester by-pass in West Goshen Township, Chester County, by officers of the Pennsylvania State Police who detected his alleged violation by use of radar apparatus.

2. Appellant, who had been driving westward on Route 3, the West Chester-Philadelphia Pike, entered the by-pass therefrom by means of an access ramp and drove westward on the by-pass crossing over top of Route 202, the West Chester-Paoli Pike, and proceeded for a distance of between one and one-half and two miles to the point where he was intercepted by a State Police Officer a short distance east of the insersection of the by-pass with Route 29, the West Chester Phoenixville Pike.

3. The West Chester by-pass, slightly less than five miles long, extends from a point south of West Chester on Route 202, the West Chester-Wilmington Pike, in an arc to the east and north of West Chester to its intersection with Route 322, the West Chester-Downington Road, at a point northwest of West Chester.

4. On January 3, 1962, there were erected by the Commonwealth, on the right hand side of the by-pass for drivers proceeding in the same direction as appellant, three official warning signs indicating that radar was in operation. The warning signs were 12 inches vertically and 24 inches horizontally in size and carried in letters 3 inches high the words "radar enforced." They were attached to existing signs designating the prevailing speed limit at 50 miles per hour for passenger vehicles and 40 miles per hour for trucks. They were in accordance with the official regulation promulgated by the Secretary of Highways of the Com-

monwealth on August 31, 1961, and filed with the Secretary of the Commonwealth pursuant to the provisions of section 1002 (d.1) (3) of the code, added April 28, 1961, P. L. 108, sec. 2, 75 PS §1002 (d.1) (3).

5. The first of the three warning signs was located about two city blocks from the southern terminus of the by-pass south of West Chester, the second thereof was at a point a short distance west of the intersection of the by-pass with Route 29, and the third was at a point a short distance east of the intersection of the by-pass with Route 100, the West Chester-Pottstown Pike. No such sign was erected on the right hand side for traffic proceeding in the same direction as appellant between the point where he entered the by-pass and the point thereon where he was intercepted.

6. The radar apparatus used in detecting appellant's speed was of a type approved by the Secretary of Revenue and had been calibrated and tested for accuracy and found accurate within a period of 30 days prior to January 3, 1962. The police car containing the radar apparatus was parked off the right hand side of the by-pass, headed in the same direction as appellant, at a point west of the Paoli Pike intersection and east of the Route 29 intersection with the by-pass, and the radar team operating the apparatus was composed of a corporal operating the radar gear and three troopers acting as interceptors, all members of Pennsylvania State Police.

7. As appellant approached the radar car, the corporal operating the radar gear had his car in view through his rear view mirror when the car broke the radar beam at a speed of 60 miles per hour in a 50 miles per hour zone and continued to have the car in view until appellant was intercepted by a trooper member of the team at a point about one city block west of the radar car. There were no other vehicles on the highway at that time. The interception was the result

of a radio message from the corporal operating the radar gear to the trooper who made the interception, reporting that appellant was violating the speed limit.

8. Appellant was charged with a violation of section 1002(b) (6) of the code before a justice of the peace and paid a fine and costs therefor without a hearing. Subsequently, after hearing before a representative of the Department of Revenue, Bureau of Traffic Safety, his license was suspended.

9. Appellant's operating privileges had been suspended previously on two occasions: On August 17, 1961, for two months for speeding at 65 miles per hour; and on December 18, 1961, for two months for speeding at 60 miles per hour, both in 50 miles per hour zones. In addition, appellant's record shows the following violations: 1960, payment of fine and costs for disobeying a traffic signal; 1961, payment of fine and costs for violation of right of way provisions of the code; and 1961, payment of fine and costs for reckless driving.

10. Appellant lives in Downingtown, Pennsylvania, and is employed as pharmacist in a pharmacy in Kennett Square, Pennsylvania, a distance of some 15 miles by highway from his residence and between which points no direct public transportation is available. Economic hardship and personal inconvenience would result to appellant from loss of his operating privilege.

## Discussion

No conviction of a motor vehicle operator may be had on evidence obtained through use of radar apparatus unless (1) it is of a type approved by the Secretary of Revenue, (2) it has been calibrated and tested for accuracy and found accurate or adjusted for accuracy within 30 days prior to the alleged violation, (3) official warning signs "have been erected on the highway by the proper authority indicating that radar is in op-

eration", and (4) the speed recorded is six or more miles per hour in excess of the legal speed limit: The Vehicle Code of April 29, 1959, P. L. 58, sec. 1002-(d.1) (1), added April 28, 1961, P. L. 108, sec. 2, 75 PS §1002(d.1) (1). Failure to establish that such warning signs had been erected is fatal to such a prosecution: Commonwealth v. Sheetz, 10 Chester 415. Thus, if the signs required by the code were not erected, appellant was not guilty of the speeding offense charged and his operator's license is not subject to the suspension for violation of the 50 miles per hour speed limit provision of the code.

The narrow question involved is the proper construction of the code requirement as to warning signs. Must signs have been erected at places so numerous and so located that appellant must have had the opportunity to see such a sign or signs on the West Chester by-pass, the highway on which he was apprehended? Or is it sufficient that such signs were posted at some points on that highway conformably to the regulations promulgated by the Secretary of Highways, although not necessarily at any point thereon between the place where appellant entered upon that highway and the place of his apprehension?

The provisions of section 1002 (d.1) (1) of the radar amendment apply only to State highways, including the Pennsylvania Turnpike system, and are enforcible only by officers of the Pennsylvania State Police. Section 1002 (d.1) (3) specifically authorized the Secretary of Highways to establish by regulation the size, color and type of warning signs and to designate the intervals at which they should be erected. The secretary promulgated such regulations effective August 31, 1961, requiring warning signs to be erected not less than ten miles apart. While it was the obvious intention of the legislature in enacting the amendment to avoid "radar traps" by requiring erection of warning

signs, it left to the Secretary of Highways the determination of where they should be placed along the more than 40,000 miles of State highways of the Commonwealth. Although warning of radar enforcement was contemplated, it is unreasonable to conclude that the legislature intended warning signs to be placed at every fence corner throughout the State highway system. It intended that they be placed at reasonable intervals and places.

Appellant argues that he had no opportunity to see any radar warning sign from the point where he entered the by-pass to the place of his apprehension, a distance of between one and one-half and two miles, because none had been erected between those points, so that he was given no warning that radar was in operation.

That argument, however, overlooks the fact that the three warning signs erected within the five mile length of the by-pass complied with the regulation established by the secretary and that his contention, carried to its logical conclusion, would require erection upon all State highways of two such signs, one for traffic proceeding in each direction, at every intersection with any road from which vehicular traffic enters those highways. No such absurd result was intended in the enactment of the amendment.

Appellant does not, and could not successfully, make the defense of ignorance of the code provisions and of the regulation promulgated thereunder which in itself has the force of law. Ignorance thereof would be no defense to the charge of speeding or its proof by radar evidence: Commonwealth v. Jackson, 345 Pa. 456; Commonwealth v. Mittleman, 154 Pa. Superior Ct. 572. His position is based entirely upon alleged failure to erect signs which in fact gave him warning of radar enforcement in operation upon the two mile portion of the by-pass which he traversed. Our conclusion is that

signs need not be erected in that short span so long as they were erected according to law and regulation, as is established by the evidence, in three places within the five mile length of the by-pass. As erected they were placed at reasonable locations and intervals.

*Conclusions of Law*

1. Appellant violated the provisions of section 1002 (b) (6) of The Vehicle Code.

2. Appellant's operator's license is subject to suspension for a period of three months.

*Order*

And now, April 2, 1963, the action of the Secretary of Revenue in suspending for three months the operator's license of John J. Sabatino is affirmed.