# Fornwalt Motor Vehicle Operator License Case.

412

Argued April 14, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Elmer T. Bolla,* Deputy Attorney General, with him *Walter E. Alessandroni,* Attorney General, for Commonwealth, appellant.

*Harold Kaminsky,* for appellee.

OPINION BY WOODSIDE, J., June 11, 1964:

Radar was used in the apprehension of Cyrus G. Fornwalt for speeding in Pennsylvania. He paid the fine and took no appeal from his conviction. As a result of the speeding conviction the Secretary of Reve-

nue, after hearing, suspended his operating privilege.[1] Fornwalt then appealed to the Court of Common Pleas of Cambria County which reversed the secretary and restored his operator's license. The Commonwealth appealed to this Court.

Judge SHETTIG held in this and four other cases now before us that the radar warning signs erected on the highway did not comply with the provisions of the law, and therefore evidence of speeding obtained through radar was not admissible either to obtain the convictions or to establish the offense of speeding in the license suspension hearings.

The use of radar to apprehend speeders in Pennsylvania was first authorized by the Act of April 28, 1961, P. L. 108, amending The Vehicle Code of April 29, 1959, P. L. 58, by adding thereto §1002(d.1), 75 P.S. §1002(d.1).

The provisions of that section relevant here are as follows:

"(d.1) (1). The rate of speed of any vehicle may be timed on any State highway, including the Pennsylvania Turnpike System, by officers of the Pennsylvania State Police through the use of radio-microwaves, commonly referred to as electronic speed meters or radar.

"No conviction shall be had upon evidence obtained through the use of radar apparatus unless—

. . .

"(iii) official warning signs have been erected on the highway by the proper authority indicating that radar is in operation;

. . .

"(3) The Secretary of Highways shall have the authority to establish, by rule and regulation, the size, color and type of warning sign to be erected on the

---

[1] See §618(b)(2) of The Vehicle Code of April 29, 1959, P. L. 58, 75 P.S. §618(b)(2) for the authority of the secretary to suspend operators' licenses.

highways where radar is in use and to designate the intervals at which such warning signs are erected."

The signs erected by the Secretary of Highways in accordance with rules and regulations established by him pursuant to subsection (3), supra, are attached to speed limit signs and contain the words "Radar Enforced". The court below held that "the signs as designed by the Secretary of Highways must indicate that the speed of vehicular traffic is being timed by means of an electronic device on a particular highway and at a particular time . . ." It said that its opinion "will further require the State Police when operating radar speedcheck points to put up and take down the new signs, . . ."

Radar was not used to apprehend speeders in Pennsylvania prior to the Act of 1961. The legislature deemed it advisable to warn motorists that a new means of apprehending speeders is now in use in Pennsylvania by directing the erection of signs "indicating that radar is in operation."

It is not necessary for the signs to contain the language "radar is in operation" as any sign that would "indicate" this fact meets the requirement of the act. The appellee argues that the use of the verb "is" in the present tense indicates that the signs must be limited to the time and place of state police use of radar.

The court below correctly observed that in amending The Vehicle Code "the legislature was concerned with public safety and . . . the radar act is designed to promote highway safety and to reduce the number of deaths occasioned by speeding resulting in accidents." The provision of the radar amendment must be weighed in the light of the legislature's concern for the public safety. Highway safety is promoted by increasing the number of motor vehicle operators who habitually drive within the speed limits, and by reducing the number who habitually exceed the speed limit.

There are two types of speeders on the highways and the radar law aims at both of them. . Some operators exceed the speed limits only because they momentarily are not conscious of their speed. The signs direct their attention to speed. If the signs are erected only at the spot where the police are using radar their value in reminding these operators throughout the Commonwealth to keep within the speed limit would be practically nil. Other operators, with eyes glued on the rear view mirror, deliberately exceed the speed limits whenever it appears to them that no policeman is following.

No safety program can be based upon the theory that a speeder has a right to be notified of the exact location of every waiting policeman. Safety cannot be promoted by a system which permits a motorist alert to warning signs and police cars to speed with assured immunity.[2] The radar warning signs erected by the Secretary of Highways discourage speeding even when there is no radar in use in the immediate vicinity of the sign.

Viewed in the light of the circumstances under which the law was enacted, the mischief to be remedied and the object to be obtained,[3] it is clear that the legislature did not intend to limit the erection of the radar

---

[2] There was a time when even officials became obsessed with the idea that catching speeders was a *game* in which the violator had the right to a "sporting chance." Police cars were painted white so no speeder who watched through his rear view mirror could be caught. Apprehending speeders was looked upon as a continuation of the childhood game of "cops and robbers." Unfortunately, highway safety is not a game, but a *deadly* serious problem. The attitude of a segment of the public on highway safety is probably the result of a psychological phenomenon in which every operator thinks of himself as an occasional traffic violator but never visions himself as being the killed or the killer.

[3] See Statutory Construction Act of May 28, 1937, P. L. 1019, §51, 46 P.S. §551.

warning signs to the specific time and place when and where the state police are using radar to apprehend speeders.

During the time when the radar amendment to The Vehicle Code, supra, was in the process of enactment by the General Assembly an amendment was offered in the Senate to clause (iii) to make it read ". . . that radar is in operation *at the immediate time and place.*" This proposed amendment to the bill was defeated, thus indicating that at least the Senate considered and rejected limiting the use of signs to the "immediate time and place" where the state police were using radar.

Furthermore, if the legislature intended the use of the signs to be limited to the time and place that the state police are using radar, it would be difficult to account for its passing over the state police, who alone could determine when and where the signs should be erected, and the Secretary of Revenue, who approves the radar equipment, to put the control of the signs in the Secretary of Highways, as was done by subsection (3), supra. Giving this authority to the Secretary of Highways is indicative of legislative intent to have permanent signs erected.

The Commonwealth contends that even if the requirements for the admission of evidence of speeding obtained by radar in order to support a "conviction" were not met, no such requirements are necessary to admit evidence of speeding obtained by radar at the hearing before the secretary in a license suspension case. Inasmuch as we have decided that the court below was in error on the point on which it rested its reversal of the Secretary of Revenue in this and other cases, there is no need to examine or pass upon the other contentions of the Commonwealth.

As far as we know, all trial courts except the court below held that the radar warning signs meet the re-

quirements of The Vehicle Code, supra. See opinions written by Judge CAMPBELL in *Commonwealth v. Wrye,* 3 Centre Co. L.J. 85 (1963) ; Judge HIMES of Huntingdon County in *Commonwealth v. Miller,* No. 5 Feb. Term, 1963, unreported; Judge GAWTHROP of Chester County in *Sabatino License,* 31 Pa. D. & C. 2d 215 (1963), and Judge KREIDER of Dauphin County in *Commonwealth v. Lewis,* 82 Dauph. 153 (1964).[4] Although the specific question here involved was not raised, the Supreme Court affirmed a radar conviction which, if the court below is correct in its conclusion, should have been reversed. *Commonwealth v. Bartley,* 411 Pa. 286, 191 A. 2d 673 (1963).

The order of the court below is reversed.

---

[4] The brief of the Attorney General lists the following license suspension cases in which the courts of common pleas in unreported opinions recognized without question the validity of the signs: *Commonwealth v. Deski,* No. 1034 March Term, 1963, Luzerne County; *Commonwealth v. Scheller,* No. 10 January Term, 1964, Carbon County; *In Re: Appeal of Brasco,* No. 26 September Term, 1963, Beaver County; *Galbraith v. Secretary of Revenue,* Misc. No. 12131 of 1963, Chester County; *Appeal of O'Malley,* No. 410 January Term, 1963, Lackawanna County; *Appeal of Palumbo,* No. 2395 May Term, 1962, Bucks County; *Commonwealth v. Di Santo,* 81 Dauph. 23, 24 (1963) ; *Commonwealth v. Wickline,* Misc. D. No. 3 September Term, 1963, Book 35, page 415, Butler County; *Commonwealth v. Cramer,* No. 13 May Term, 1963, Huntingdon County; *Appeal of McKain,* Misc. D. No. 18 June Term, 1963, Book 35, page 391, Butler County; *Commonwealth v. Marzolf,* No. 126 Commonwealth D. 1963 (Dauphin County).